USDC SCAN INDEX SHEET

















BJR    3/25/05    13:55

3:05-CV-00595   PITTMAN V. ORANGE 21 INC

*1*

*CMP.*

**ORIGINAL**

FILED

05 MAR 24 PM 4: 12

CLERK, US DISTRICT COURT
SOUTHERN DISTRICT OF CALIF.

BY: _____ DEPUTY

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH (68581)
DARREN J. ROBBINS (168593)
401 B Street, Suite 1600
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE PITTMAN, On Behalf of Herself ) and All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>ORANGE 21, INC., BARRY BUCHHOLTZ, ) MICHAEL BROWER, MARK SIMO, ) HARRY L. CASARI, DAVID R. MITCHELL,) ROGER S. PENSKE, JR., GREG THEISS and ) JEFFREY THEODOSAKIS, )<br><br>Defendants. ) | No. '05 CV 0595 JM (BLM)<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><br>DEMAND FOR JURY TRIAL |

**NATURE OF THE ACTION**

1.      This is a class action on behalf of those who acquired the common stock of Orange 21, Inc. ("Orange 21" or the "Company") pursuant to the Company's false and misleading Registration Statement and Prospectus (collectively, the "Registration Statement") issued in connection with its December 14, 2004 initial public offering ("IPO"), seeking to pursue remedies under the Securities Act of 1933 (the "1933 Act").

2.      Orange 21 designs, develops and markets premium products for the action sports and youth lifestyle markets.[1] Its principal products, sunglasses and goggles, are marketed under the brand Spy Optic. The Company's product matrix consists of seven product categories, including fashion sunglasses, women-specific sunglasses, performance sport sunglasses, snow goggles, motocross goggles, apparel and accessories. These products target the action sports market, including surfing, skateboarding and snowboarding, and the youth lifestyle market within fashion, music and entertainment. The Company sells its products in approximately 4,100 retail locations in the United States and internationally through approximately 2,000 retail locations serviced by the Company and its international distributors.

3.      On December 14, 2004, Orange 21 accomplished its IPO of 3.48 million shares at $8.75 per share (including 2.48 million shares sold by Orange 21 and 1 million shares sold by No Fear, Inc.) for net proceeds of $20.2 million to Orange 21 and $8.1 million to No Fear, pursuant to a Registration Statement. The Registration Statement failed to disclose that Orange 21 was engaging in copyright infringement and that its European operations were underperforming and would have to be restructured, which costs would adversely affect 2005 results.

4.      On February 17, 2005, Orange 21 announced reduced earnings expectations for 2005 due in part to changes in its European infrastructure.

5.      On this news, Orange 21's stock price collapsed to around $6.00 per share.

---

[1]      On November 29, 2004, the Company changed its name from Spy Optic, Inc.

6.   Subsequently on March 7, 2005, Orange 21 disclosed it had received a cease-and-desist letter from Oakley, Inc. In response, the Company would be required to make changes based on the alleged infringements.

7.   Thus, the true facts which were omitted from the Registration Statement were:

(a)   That the Company's European operations were underperforming and lacked the requisite infrastructure necessary to perform consistent with defendants' representations and expectations and that as a result the Company would need to restructure these operations and incur material costs, thereby materially adversely affecting the Company's operating performance for 2005.

(b)   That the Company was violating patents and trademarks associated with its key product – fashion frames – and that the Company would halt the production of certain products, including the New Meteor New Espador and 42 fashion frames.

(c)   That the Company was modifying its distribution policies which necessarily would increase the Company's cost structure and erode the Company's margins and net income by $700,000 for FY 2005.

## JURISDICTION AND VENUE

8.   The claims asserted herein arise under and pursuant to §§11 and 15 of the 1933 Act [15 U.S.C. §§77k and 77o].

9.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the 1933 Act.

10.   Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because the defendants maintain an office in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

11.   In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

- 2 -

## PARTIES

12.    Plaintiff Christine Pittman acquired the common stock of Orange 21 pursuant to the IPO, as set forth in the accompanying certification, and has been damaged thereby.

13.    Defendant Orange 21 is headquartered in Carlsbad, California. Its stock is traded in an efficient market on the NASDAQ.

14.    Defendant Barry Buchholtz ("Buchholtz") is Chief Executive Officer and a director of Orange 21. Buchholtz signed the false and misleading Registration Statement.

15.    Defendant Michael Brower ("Brower") is Chief Financial Officer, Treasurer and Secretary of Orange 21. Brower signed or authorized the signing of the false and misleading Registration Statement.

16.    Defendant Mark Simo ("Simo") is Chairman of the Board of Directors of Orange 21. Simo signed the false and misleading Registration Statement.

17.    Defendant Harry L. Casari ("Casari") is a director of Orange 21. Casari signed the false and misleading Registration Statement.

18.    Defendant David R. Mitchell ("Mitchell") is a director of Orange 21. Mitchell signed or authorized the signing of the false and misleading Registration Statement.

19.    Defendant Roger S. Penske, Jr. ("Penske") is a director of Orange 21. Penske signed or authorized the signing of the false and misleading Registration Statement.

20.    Defendant Greg Theiss ("Theiss") is a director Orange 21. Theiss signed or authorized the signing of the false and misleading Registration Statement.

21.    Defendant Jeffrey Theodosakis ("Theodosakis") is a director of Orange 21. Theodosakis signed or authorized the signing of the false and misleading Registration Statement.

22.    The defendants referenced above in ¶¶14-21 are referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who acquired shares of Orange 21 common stock traceable to the Company's false and misleading Registration Statement for its

IPO (the "Class"), and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

24.    The members of the Class are so numerous that joinder of all members is impracticable. Orange 21 stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Orange 21 or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. Orange 21 has more than 7 million shares of stock outstanding.

25.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

26.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

27.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the 1933 Act was violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business, operations and management of Orange 21; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

28.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

-4-

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## BACKGROUND

29. Orange 21 designs, develops and markets premium products for the action sports and youth lifestyle markets. Its principal products, sunglasses and goggles, are marketed under the brand Spy Optic. The Company's product matrix consists of seven product categories, including fashion sunglasses, women-specific sunglasses, performance sport sunglasses, snow goggles, motocross goggles, apparel and accessories. These products target the action sports market, including surfing, skateboarding and snowboarding, and the youth lifestyle market within fashion, music and entertainment. The Company sells its products in approximately 4,100 retail locations in the United States and internationally through approximately 2,000 retail locations serviced by the Company and its international distributors.

## THE FALSE AND DEFECTIVE REGISTRATION STATEMENT AND PROSPECTUS

30. In November and December 2004, the Company filed a Form S-1 Registration Statement (and Amendments thereto) in connection with its IPO, which Registration Statement was declared effective by the SEC on or about December 14, 2004. The Registration Statement stated:

Growth Strategy

- *Expand Domestic Distribution and Brand Recognition Outside of California.* For nine months ended September 30, 2004, approximately 49% of our domestic net sales were derived from sales within the state of California. We intend to increase significantly our marketing distribution efforts throughout the United States by expanding our internal and external sales teams and growing our distribution base.

- *Expand International Distribution.* We believe that significant opportunities exist to market our products outside the United States. We plan to employ our distribution models to increase distribution of our products internationally and enable our international distributors to focus their efforts on regional sales and marketing programs.

- *Introduce New Products and Product Lines Under Our Existing Brand.* We intend to increase our net sales by introducing new products under our existing product lines, such as our women-specific products, and by introducing new product lines, such as premium handmade sunglass products and prescription eyewear.

31.    In fact, Orange 21's European distribution model was failing.  Moreover, some of Orange 21's key new product lines were infringing, or appeared to infringe, on patents and trademarks from competitors which would affect the Company's product introduction.

32.    On February 17, 2005, the Company announced its 2004 results and that its guidance for 2005 would be substantially below what the market was expecting:

Initial Outlook for 2005

At this time, the Company also issued initial 2005 financial guidance.  On a full-year basis, the Company expects net sales for 2005 to increase by approximately 25% – 30%.

"We are pleased with our year-end 2004 results, particularly as a new public company.  The strong performance is a reflection of the continued execution of our focused strategy," said Barry Buchholtz, CEO.  "Due to Spy Optic's strong growth opportunities in Europe, we have decided to expedite our investment in this marketplace.  As a result, and as we outlined last month in our press release dated January 28, 2005, we have made the decision to transition to a dealer direct distribution program from a distributor program in Italy and France.  Although this transition will involve upfront costs to the Company, we believe that it represents significant long-term strategic benefits to the Company and is necessary to achieve our growth plans for the European market."

On a full-year basis for 2005, the Company expects earnings per share growth of approximately 70% to 90%.  Historically, the Company has incurred a loss in Q1 due to lower revenue levels comparative to other quarters and due to front end loaded sales and marketing expenses.  This has not changed and we would expect the same for this year.

33.    Analysts for Roth Capital immediately downgraded Orange 21:

*    Downgrading opinion from BUY to NEUTRAL, and lowering price target and EPS estimates, to reflect anticipated increases in SG&A expense in 2005.

*    4Q04 results ahead of expectations, but management's newly introduced earnings guidance for 2005 is well below our previous forecast.

*    Lowering 2005 EPS estimate from $0.27 to $0.18, and 2006 estimate from $0.38 to $0.30, to reflect increased investment in European sales infrastructure.  While such investment should help benefit long term market penetration in Europe, it hampers visibility for near-term margin expansion.

*    At 53x our revised 2005 EPS estimate of $0.18 , shares of ORNG appear fully valued.  Lowering 12-month price target from $13 to $9.

*    *    *

The difference in net income between management's new guidance and our prior forecast is primarily due to management's intention to now increase investment in its European sales infrastructure to achieve greater penetration in that market. Management intends to spend an incremental $0.6-$0.7 million annually in Europe

above prior expectations on additional point-of-purchase displays, hiring new sales managers, hiring 15 or more Spy Optic-only sales representatives, and other marketing initiatives. While such greater investment in the European sales and distribution platform should drive future top line growth, we note that such expenses certainly have upfront cost ramifications, which should negatively impact operating margins in the near term before such investments generate meaningful top line results.

Financial outlook

We are lowering our EPS forecast for 2005 from $0.27 to $0.18 to reflect expectations for increased SG&A expenses in Europe for reasons described above. Our top line estimate for 2005, based on favorable momentum displayed during 4Q04, is actually raised slightly from $41.6 million to $42.1 million.

34. On this news, Orange 21's stock collapsed to as low as $5.84 per share, before closing at $6.60 per share on volume of 2.3 million shares.

35. On March 7, 2005, Orange 21 disclosed it had received a cease-and-desist letter from Oakley, Inc. with respect to patent and trademark issues involving three of its product styles.

36. The true facts which were omitted from the Registration Statement were:

(a) That the Company's European operations were underperforming and lacked the requisite infrastructure necessary to perform consistent with defendants' representations and expectations and that as a result the Company would need to restructure these operations and incur material costs, thereby materially adversely affecting the Company's operating performance for 2005.

(b) That the Company was violating patents and trademarks associated with its key product – fashion frames – and that the Company would halt the production of certain products, including the New Meteor New Espador and 42 fashion frames.

(c) That the Company was modifying its distribution policies which necessarily would increase the Company's cost structure and erode the Company's margins and net income by $700,000 for FY 2005.

## FIRST CLAIM FOR RELIEF

**For Violation of Section 11 of the 1933 Act**
**Against All Defendants**

37. Plaintiff repeats and realleges the allegations above, as if fully set forth herein. Plaintiff for purposes of this claim disclaims any allegations of fraud. This claim is brought on

behalf of a Class of all those who acquired Orange 21 common stock traceable to Orange 21's IPO Registration Statement who were damaged thereby, seeking to pursue remedies under the 1933 Act against Orange 21, the issuer of the stock, and defendants Simo, Buchholtz, Brower, Casari, Mitchell, Penske, Theiss and Theodosakis, who were Orange 21's directors and/or signatories of the Registration Statement for the IPO. Orange 21, as the issuer, and the Individual Defendants, who signed the Registration Statement that contained untrue statements of material fact or omitted to state facts required to be stated therein or necessary to make the statements therein not misleading, are liable under §11(a)(1) and (2) of the 1933 Act.

38. Each of the defendants named in this claim is liable under §11(a) because the Registration Statement, when it became effective, contained an untrue statement of material fact or omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading.

39. Defendants Buchholtz, Brower, Simo, Casari, Mitchell, Penske, Theiss and Theodosakis each signed or authorized the signing of the Registration Statement. Because the Registration Statement contained untrue statements of material fact or omitted to state a material facts required to be stated therein or necessary to make the facts stated therein not misleading, each of these defendants is liable as a "person who signed the Registration Statement," under §11(a)(1), 15 U.S.C. §77k(a)(1).

40. Defendants Buchholtz, Simo, Casari, Mitchell, Penske, Theiss and Theodosakis were directors of Orange 21 when the Registration Statement became effective. Because the Registration Statement contained untrue statements of material fact or omitted to state material facts required to be stated therein or necessary to make the facts stated therein not misleading, each of these defendants is liable as a director under §11(a)(2), 15 U.S.C. §77k(a)(2).

41. Plaintiff and other members of the Class acquired Orange 21 common stock pursuant and traceable to the Registration Statement without knowledge of the untruths or omissions alleged herein, and sustained damages as a result. Plaintiff and the other members of the Class could not have reasonably discovered the nature of defendants' untruths and omissions.

42.    This action was brought within one year after the discovery of the untrue statements and omissions and less than three years after the stock offering.

## SECOND CLAIM FOR RELIEF

### For Violation of Section 15 of the 1933 Act
### Against Defendants Orange 21, Buchholtz and Simo

43.    Plaintiff repeats and realleges the allegations above, as if fully set forth herein. Plaintiff for purposes of this claim disclaims any allegations of fraud.

44.    Defendants Buchholtz and Simo, by reason of their positions with Orange 21 and/or their stock ownership, were controlling persons of Orange 21 and are liable under §15 of the 1933 Act. Orange 21 controlled each of its employees and is therefore liable under §15 of the 1933 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.    Awarding rescission or a rescissory measure of damages; and

E.    Such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: March 24, 2005                 LERACH COUGHLIN STOIA GELLER
                                      RUDMAN & ROBBINS
                                      WILLIAM S. LERACH
                                      DARREN J. ROBBINS

                                      DARREN J. ROBBINS

401 B Street, Suite 1600
San Diego, CA  92101-4297
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt Orange 21.doc

JS44
(Rev. 07/89)

# CIVIL COVER SHEET



FILED

sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

CHRISTINE PITTMAN, On Behalf of Herself and All Others Similarly Situated

**DEFENDANTS**

ORANGE 21, INC., BARRY BUCHHOLTZ, MICHAEL BROWER, MARK SIMO, HARRY L. CASARI, DAVID R. MITCHELL, ROGER S. PENSKE, JR., GREG THEISS and JEFFREY THEODOSAKIS

05 MAR 24 PM 4: 10

CLERK, U.S. DIST...
SOUTHERN DISTRICT OF CALIF...

BY:_____ DEPUT

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Ventura
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

'05 CV 0595 JM    (BLM)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Darren J. Robbins (168593)
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
401 B Street, Suite 1600
San Diego, CA 92101   619/231-1058

**ATTORNEYS (IF KNOWN)**

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX**
**(For Diversity Cases Only)        FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).** Complaint for Violation of the Federal Securities Laws; 15 U.S.C. §§78j(b) and 78t(a)

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | **SOCIAL SECURITY** | |
| | | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 153Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**  ☒ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

**DEMAND $**

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**  JUDGE _____  Docket Number _____

DATE March 24, 2005

SIGNATURE OF ATTORNEY OF RECORD

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

PL #2500  3/24/05  #112234 VB